The next case this morning is 5220073 people versus white. Arguing for the defendant appellant is Brett Zeeb. Arguing for the state appellee is Stephanie Lee. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings. Good morning. Morning, Mr. Zeeb. You represent the appellant. You may begin when you're ready. Thank you. Good morning, your honors and counsel. My name is Brett Zeeb from the state appellate defender's office on behalf of Jason White. May it please the court. The first two issues in this appeal go hand in hand. So I'm going to focus my arguments there. But if time permits, I will also briefly address the third issue regarding the erroneous admission of hearsay statements from witness Matthew Brandt. Your honors. The defense theory in this case was that although Jason White helped Brian Waters clean up the crime scene and dispose of evidence after the shooting and robbery had ended, he had no knowledge of water's intent to rob and shoot Zachary Hubbard. White merely wanted to sell Hubbard marijuana. He didn't want to shoot and rob him. The state's theory was that White was the one who shot and robbed Hubbard or alternatively that he was accountable for water's actions. Now there certainly is nothing wrong with the prosecutor advancing two different legal theories for murder. But what the prosecutor did do wrong in this case was to misstate the law of accountability when he told the jury during closing argument that White was accountable for water's actions of killing Hubbard solely because he helped water's clean up afterwards. Even if he had no knowledge of water's plan to rob and shoot Hubbard, even if he had no knowledge that that water's had a gun. Illinois law is clear that actions taken after the commission of the offense cannot be used alone. And that's the key that can't be used alone to find a defendant guilty. So White's actions of helping clean up the crime scene and dispose of evidence do not establish an independent basis to hold him accountable because the offenses of armed robbery and murder had already been completed. The jury could in fact consider those actions insofar as they raised an inference of White's prior concurrent participation, but they are insufficient on their own to hold White accountable. Contrary to the state's argument on appeal, the jury could not consider White's conduct after the robbery and shooting as acts in furtherance of a common design to sell cannabis. First off, since the state didn't raise that, didn't advance a common design theory at trial, this court should bar it from making the argument for the first time on appeal. But even if this court does consider the state's common design argument, it is meritless because no rational jury could find that the act of killing and robbing Mr. Hubbert, the very person who was supposed to buy the cannabis, the customer in this case, was conduct in furtherance of selling Hubbert cannabis. All the cases the state cites in its brief illustrate the central point that for a defendant to be held accountable for a principal's crime, the state should be held accountable for the underlying agreed upon acts. So let me stop you there. You're making the argument that this illegal drug deal is just a normal kind of a transaction that, you know, that's all it was. I think the state in their brief makes an argument that suggests to recharacterize the drug deal as what it is, an illegal act, and that it was a likely or foreseeable event that something could go wrong during that illegal clandestine transfer, you know, of an illegal substance, and that it could be expected that guns are going to be there, that somebody might get upset, somebody might get shot. How do you address that? Well, it's, I don't want to characterize this as just, this is just a normal activity. Granted, it wasn't a legal activity. It was a person trying to sell a sizable amount of cannabis to another person. And I don't mean to mischaracterize your, because you do a very nice job of admitting what it is. But so I'm not suggesting that you were trying to mislead us by saying, Oh, it's just a normal deal today, you know, an everyday Yes. I didn't, I didn't, I didn't interpret your question that way, Your Honor. Thank you. But I guess what the, what the big difference with this situation is, is that although it was a drug deal, it was, it was a cannabis deal. And the difference between this case and all the cases that the state cite is that those cases involve some sort of violence, that the person was armed, there, there was some sort of force element. For example, in a, in a foreseeability that something bad might happen involving a weapon or a murder is much more likely. So I'd say the foreseeability on our case is way up at this level. And when it's an armed robbery or a planned battery with a gun, then the likelihood of a violent death is certainly much more foreseeable. And I think I distinguished all the cases that the state cites in its brief to support its point. And it boils, it boils down to was whether Waters, his conduct, did it further the plan and intended an act of selling Hubbard cannabis. You know, selling cannabis is not inherently a violent activity. No Illinois, Illinois case holds that selling someone drugs, cannabis, meth, whatever it might be, is a state site. Again, it's there, there was a planned robbery, an agreement to rob someone, there was an agreement by gang members to arm themselves and go confront other gang members. And that case, the foreseeability is off the charts that something bad is going to happen. But here, again, there's no, there's no evidence put forth that they're, the state conceded and it's it's, and it's, let me backtrack, the state argued, the prosecutor argued in his closing argument that it didn't matter whether Hubbard had no knowledge that Mr. Waters intended to shoot and rob or even had a gun. So this is, this is just a this is a drug transaction that did go wrong, obviously, but not because of any actions by Mr. Hubbard, and not because of any knowledge that Hubbard had about what Mr. Waters was going to do. The state further argues that the prosecutor was only trying to point out to the jury that the murder and the robbery were not complete until White and Waters escaped from the scene, which the state contends is a proper statement of the law, but the state is wrong. Once Hubbard had been shot and killed, the crimes of first degree murder and armed robbery were over, they was not a case where a killing was committed in the course of an escape from a robbery. This wasn't the case where the police or anyone else was in hot pursuit of them. You know, after the shooting, and the robbery were over, everyone left, they got in the van, they went to Autumn's house. Sometime later, they drove to a park, they disposed of evidence through a gun in the lake. Then they came back to that street and got rags and alcohol and then finally went back to the scene and cleaned up the crime scene. Those things occurred well after those offenses were over. Finally, the defense counsel didn't invite this error as the state argues in their brief. Defense counsel's argument regarding accountability was indeed correct. The critical question for this jury was whether the state had proven beyond a reasonable doubt that White had knowledge that Waters intended to rob and shoot Hubbard. That was a correct statement of accountability law. And this erroneous statement of law was indeed prejudicial in this case, because the jury determined that White was not the shooter, and the jury acquitted him of armed robbery. So the only way that the jury could have convicted White of first degree murder was by holding him accountable for Waters actions. And the state in its response brief did not advance an argument that this error was harmless. And that's not surprising. Because the only rational rational explanation for the jury's verdict is that it was based on the prosecutor's misstatements regarding accountability. Uh, there's an extremely high likelihood the jury was confused by the prosecutor's misstatement. And that leads me directly into issue two, which is during the jury deliberations, the jury sent a note seeking the trial court's clarification on whether the act of cleaning and or covering up the crime scene constituted promoting and facilitating the commission of the 03 accountability. And notably, at the bottom of the note, the jurors wrote clarification of the law. So there could be no, no doubt that the jury was seeking clarification on this very issue, uh, created by the prosecutor's misstatement of the law on accountability. Now, under child's, the court had a duty to clarify the judge's confusion, and the court didn't do that. The court instead told the jury it already had the instructions that needed and to continue to deliberate. Um, but that was that was an error. The judge had a duty under child's to do that. And the confusion specifically was caused because the jury heard from the prosecutor and closing argument that it would be enough to hold Mr Waters. I'm sorry. It would be enough to hold Mr White accountable for Waters actions for murder. Uh, only if he, uh, helped clean up the crime scene afterwards. That's that's all that was needed to hold him accountable. And the defense counsel objected, and the trial court overruled that objection, therefore, uh, basically sanctioning that misstatement in the eyes of the jury. So when the jury then started deliberating and looked at the I. P. I. That I. P. I. Only has the before during language. It doesn't say about things that happened after the offense. So that's where the confusion was created. So at that age, I have to interrupt you because your time is expired. Um, that was 10 minutes already. Oh, boy. Okay. May I have just a few seconds to wrap up? No, but you can do that when you have rebuttal after Miss Lee gives her argument. How about that? Okay, I apologize. I was lost in the moment there. That's all right. Um, Miss Lee on behalf of the state. Good morning, your honors. May it please the court and counsel Stephanie Lee for the state. Um, the problem that we're having here is, um, with all due respect, the defense is continuing to say that what of accountability and I, um, our position is that it absolutely can be, um, in certain instances. And as far as this, what was really an isolated remark, we do not take the position that it was air when you place it in context. However, even if you were to take it, you know, in this isolated comment that it definitely did not prejudice anything, which is exactly what the judge found in this case. In this case, the defense during their closing on the opening quote, well, their initial closing argument, which, of course, was their only closing argument. They said, don't let what happened after cloud your judgment on what happened before. At the end of the day, we can dance around before and after. But the central question is, has the state proven beyond a reasonable doubt that Jason White knew this was a murder? And that just isn't the accountability law. Accountability law consists of two things. You can either share a criminal intent, or you can have a common design. Clearly, those two things have to be a different or there wouldn't be an order there. I disagree that the people below did not, in fact, argue common design. I don't know that we use those exact words. I don't know. But we certainly were saying that they were tied up in this entire sequence of events that this defendant set off the chain of events. It wasn't somebody who came in later, found a dead body, came upon the scene. This is a defendant who set all of this in motion. And he certainly didn't think they were going out on an innocent expedition. And so, in fact, there was this common design. Let's get the victim, meet at this isolated house, which the defendant picked. So you have a question? Okay, yeah, I'll stop there. With regard to the common design. Now, we heard Mr. Seeb's description of, you know, the cannabis sale as being, I'm assuming that we have to base, well, I'm not assuming, we have to base the common design on what we know of Mr. White's intention. And Mr. White's intention was to make a cannabis sale. How is there a common design to murder somebody in that regard? Right. There's actually two pieces to that. Obviously, defendant, you know, exercises right and did not testify. So the testimony we had proved that there was at least several statements where Waters and Waters' girlfriend said, oh, he texted us beforehand and said, pretend you have cannabis. Either way, if you believe the cross-examination of Waters, by the time that Waters got to the scene, he says he told defendant or he told the police that he didn't, that he told the defendant at the time he arrived at the scene that he didn't have it, which would still place the three of them, the victim, the defendant and Waters walking in with defendant being well aware that there was no cannabis. However, even if this was cannabis, he was, he put, he put the situation, they had a common plan to bring, the victim came and picked up the defendant, defendant tells him where to go, we're going to go over to this abandoned house, which I have the connection to, we're going to, you know, he called Waters, he summoned Waters to the scene, the three of them went in the house. And when you're doing a two pound, $5,000 cannabis deal, it's very clear that you would be aware that in an isolated location, you would be aware that somebody could get hurt. There are cases that don't, I believe, don't involve necessarily violence. I think Snowden was one of them. And in that case, the person just said, Oh, there's there's money over there, you can find it there, waiting in the car with the other people. He had no idea that they were and he still was accountable for this behavior. Why? Because they were a group bent on illegal felony activities that ended up getting out of hand resulting in these things. We don't know what exactly I mean, you're always going to infer intent from us, you know, circumstantial evidence. Snowden, the case you just referred to the revolve involved, the defendant was involved in a home invasion and a burglary, where they're very well could be an unsuspecting victim in the home when they go to do the burglary. And that certainly has more of an likelihood of violence than where all the parties involved know that there's a drug deal going on, and we're just making a drug deal. Why I never thought I'd say that, but that it seems like it's less dangerous to do that than the home home invasion and a burglary. Right? Well, the defendant in that case didn't participate in the actual home invasion. He told them where to go. He had no knowledge that anyone would be present in the house. It's equally possible that someone could have been in this abandoned house and we didn't know or defendant didn't know they were getting off the out of sight in a secluded location where anything could happen and, you know, $5,000 is not a small amount of money. Two pounds of cannabis is not a small amount of cannabis. And we don't, there's at least some evidence here as well that by the time this all took place, the defendant actually knew that there was never going to be any cannabis because there was at least some testimony that he texted up front and say, pretend to have it. He certainly knew he didn't have it. So, you know, this isn't a situation in contract law where they have to have this exact deals of this plan spelled out. We have several where there was a robbery, they were fleeing and there's one where they crashed and killed somebody. And that was accountability too. So from that standpoint, I don't think it says anywhere that it actually has to be violent. It has to be criminal activity. In this case, there are cases that talk about, you know, drugs and violence going hand in hand. Did you cite any of those? I'm sorry. I just said it was foreseeable and I don't believe that I did. Although any forfeiture would obviously not be binding on this court. And I would be happy to provide some of those if maybe most of them I think come in the search warrant aspect, not as much here. I didn't find one in accountability law per se. The point of the instruction, I just want to say I honestly the state believes there really was no objection. It was an attempt attempt to renew the complaint about that one isolated comment in closing. And if you read the entire back and forth between what they said, the judge said, this is what I'm going to say. And then he said, do you have anything else to add? And counsel for defense also said no. So was perfectly content to give that at that time. Obviously preserving the record and the reobjection of what had happened prior in the closing. The judge here actually made a really good record of why that blends into an important fact before the jury to decide. Because to the extent that we're still sort of having the dispensed position seemingly be after doesn't matter to intuit what's before or even matter at all really, which is what they continually were arguing. That's just that's just not the case. Afterwards, if it's still in the commission, so cleaning and or let's let's stop there because I have a real problem with the state's position on this. They left the scene of the crime. And the cleanup occurred after they went to the let's just say the store and got alcohol and rags and went back to the scene. They were not escaping at that So how is this not? How is that similar to cases where after a robbery, they're fleeing and they hit somebody on the sidewalk or, you know, the robbing a bank and the guard comes in, they shoot the guard. How's that similar when they have escaped the scene after the murder took place? Now, defense, of course, argued that the crime of murder was committed and done and over with. At the time, the whoever the shooter was shot the victim, and there was no one there to chase them away. The murder was over. So even if they would have stopped and cleaned up then, before they left the scene, I'm not sure that you get you get to that point. So I like a little elaboration on that, because in your brief, the state's trials that accountability exists until there's a successful getaway, successful escape from the crime scene. There's not a successful escape when the crime scene until all the evidence is wiped away. I don't know how that jives. I mean, the state's attorney's argument there. Once you escape, you've escaped. Now, if you're talking about escape all liability, in other words, you know, until all the I'm still escaping. I think escape relates to the actual act of pulling the trigger and getting away from the scene before you're caught, as opposed to going away and then contriving an idea of how to get away with the murder, you know, cleaning up the scene. Yeah, I'm just as just as Kate's, I would ask to allow a little bit more time to answer my Absolutely. Thank you. Well, in this case, they came running out of the house and they did say, let's go, let's go, let's go. But the problem there is, there was still the defendants, I'm sorry, the victim's car still parked right in front of the house. There was shells all over, there was no indication when they took the money. So when the art, the robbery part would have been complete, presumably they left with it. But what they want, it wasn't like they went and bought cleaning supplies, they actually went to I think it was defendant's wife or girlfriend's home. My point is, though, they left the scene, regardless of the victim's car was there, regardless of the shells were all over the scene, regardless of fingerprints were left at the scene, they escaped the scene of the murder, and chose to go back and clean up. Complete at that point, like an accessory after the fact, or somebody who comes in, or even obstruction of justice, is this here was part of their overlying criminal scheme from the beginning, which included clearly a robbery. I understand we we now know that the jury acquitted him, but all of those things had to fall into place. So you have a defendant who was brought the victim brought the co defendant over there. The crime I don't know of a case that says murder is 100% complete boom when the defendant is shot or the victim is shot and dies. And a robbery certainly has aspects that go on drug dealing if they didn't get away with the money. Even there, they hadn't made the sale completed the sale. These were all things that were still in the course of this conduct. It wasn't two days later. And it certainly wasn't a defendant who came in or somebody who came in more like the Uber driver in Johnson, who was brought into this thing had no idea what was going to happen and then helped with this escape after the fact. This was a defendant who put all of this in motion. So this whole thing was part of this common design between them. This isn't a third party innocent, maybe defendants wife, possibly they grabbed her to come help. You know, and but this defendant was there from the beginning throughout doing these activities and covering, cleaning up and leaving and taking the evidence away is part of that criminal design in the people's position. If you know, if not, at a minimum, it does impact a factor to consider in the in the defendant's initial intent or thought process. And so you'd still have to look at it and defense counsel continually said, this evidence doesn't matter. And it does matter. It matters at a minimum as a factor to consider. So I don't know, hopefully answer the question. But I can see if the defendant in this case would have brought the cleaning supplies with them at the time that they went to make the drug deal. That'd be a really, really strong argument that, hey, this was all planned ahead of time. But when they escape, my, my, my understanding of escape is fairly simple. You commit a crime, you leave. Once you go back, it's no longer you're no longer escaping, you're returning. And you're cleaning up. It's like, you know, what if it wouldn't have been them? What if they would have called friends to go over to this house and clean up? You know, so, to me, it's not, it's not relevant that the is relevant that they had already left the scene and then returned. So I'm just telling you what I'm having a problem with. Actually, I understand your position. I, I feel the cases are a little broader than that. But because the example of calling the friends, those would be people who were not in this conspiracy, criminal design from the beginning. And so, and again, when you see shared intent, or criminal design, they clearly have to mean two different things. Part of this criminal design, I mean, we feel the evidence is strong enough that by the time that defendant walked in that house, he knew there was no cannabis. He certainly knew he didn't bring any. Um, and you know, he changed his phone, he disconnected his account, he did all kinds of things. All the connections before, during and after came back to him. Well, I think there's lots of evidence against him in different aspects. Just one regard, it seems like it's a real stretch to say that he had accountability for, for a murder, if we're basing it solely on the fact that he came back after the murder occurred, and helped clean up the scene. So thank you for, for responding on that. And I have no further questions. Justice Gates. Justice Welch? No questions. All right, Mr. Zeeb, I know you're anxious to give us your rebuttal. Well, yes, counsel got like an extra 10 minutes there. Thank you. And the only thing that uh, that is backed up by the current law and what opposing counsel just argued before your honors is that, that things that happened after the offense was over, yes, those can, those, that's part of the equation. And defense counsel below never argued that they were totally irrelevant. What defense counsel argued was, is that the state had to prove that Mr. White was aware of Waters' intent to shoot and rob the victim in this case, and that it was, the critical question for the jury was whether the evidence proved beyond a reasonable doubt that Mr. White had that knowledge and had that awareness, and that his intent was just to sell cannabis. And so when I had initially stopped my, my opening argument here, and it was that I'm going to continue precisely that is the critical question for this court. And that is that there's a distinction between the state's position saying that things that occurred when the murder and the shooting is over, and your honor is correct that there is, that there is no case law that holds that the murder is just this ongoing thing that exists until the, you know, until the, the perpetrator cleans up the crime scene and gets rid of the evidence. That's, that's ridiculous. There's, that there, anything could be just an ongoing crime that never ended basically at that point. But what I think what hopefully will clear up things for the court, if it's not already clear, is that based on Johnson, paragraph 88, that was the proposed instruction that would have cleared up the jury's confusion in this case. And that is actions taken after the commission of the offense cannot be used alone to find a defendant guilty. That doesn't mean they're irrelevant. That just means that that can't be it. That can't be the only evidence that holds someone accountable for a murder. You may consider the defendant's actions that occurred after the offense. So the instruction was telling the jury, you could consider these things that happened after the offense, but you can evaluate those things only as far as they raise an inference of the defendant's current participation in the offense. So that addresses all the state's evidence that occurred before the murder and the shooting, the planning of the selling of the cannabis, the meeting at his old residence, all those things that the state argues could, could have been considered. But those actions can't establish an independent basis to hold a defendant accountable. And that's where the jury's confusion was. The state doesn't argue that the jury wasn't confused because there's no argument that they weren't. Their notes said they were confused on that, on this precise misstatement of the law. And the court then had a duty to clarify that. And our position is, is that the controlling law that's very well articulated to people versus Johnson would have erased any confusion. We wouldn't be here if, if the, if the court would have given a similar instruction to this that clarified for the jury what to do with these And that didn't happen. I mean, at the end of the day, there, there was evidence to show that obviously that Mr. White was involved in planning and executing a drug deal, but there's none. I'm sorry. And maybe there's other evidence after the, after the fact that would have, that could have convinced the jury that he was accountable. But the big problem is, is that the prosecutor misstated the law of accountability and told them that, you know, you, you, you can agree with the defendant's best theory that he knew nothing. He knew of no plan to rob and kill. He didn't know anything about water's intent and he's still accountable because he helped clean up after the offense was over. And that is simply not the law. If the court agrees with the state's position here, it's going to be it would be basically in direct conflict with people versus Fernandez and the Supreme court. Mr. Zeib, let me ask you a question because I remain concerned about the, the defendant's conduct prior to the murder. I mean, he clearly knew that he was going on a drug deal. And there was some intent for him to participate in a crime. Isn't he responsible for what happens during the process of that crime? No, not, he would be responsible for acts that were in furtherance of the crime, but again, shooting and robbing the person you were going to sell, sell the marijuana to is not in furtherance of selling him marijuana. You've just your customer. So the fact that he was found not guilty of robbery, for example, would be a significant factor in your argument. Exactly. Because the jury determined that he, that he was not guilty of, of the armed robbery. They didn't believe that he was, that he was the shooter in the case because they found that the state did not prove that he fired the weapon that proximately caused the death. There was only one weapon and he's, and he's not convicted of the robbery. So that begs the question of why did the jury come to this conclusion? And the only logical explanation based on the evidence is the fact that it was confused by the prosecutor's misstatement of the law regarding these actions that occurred after the offense was over. And then again, this dovetails right into that. And they, they were clearly confused because they that specific question in a note, and then the court did not clarify that confusion. It had a duty to do that under childs. It didn't do so. I mean, at the end of the day, we're not saying that there was no evidence that could have proved his guilt even for the murder, but the prosecutor bypassed that by, by misstating the law. At the end of the day, we want a conviction based on the properly admitted evidence and not on misstatements of the law. And we don't want murder convictions based on a jury that is confused by the law. And where that confusion was not clarified by the court, it cannot be said that it's a decision to convict him of murder was not based on these misstatements and not based on the court's failure to, to clarify that confusion. Isn't it also likely that the Austin testimony was believed by the, uh, by the, uh, by the jury that he testified that, um, Mr. Waters, um, the mother of Mr. Waters child, uh, told him that her, her boy, her baby daddy was in prison because I think those are her words. He was in prison because he killed somebody and that they were going to do whatever they could. She would do whatever necessary to get him out of prison. Yeah. The, the defense did put on witnesses from Austin Reed and he did testify that Ms. Hearts, uh, told him that, uh, Waters had shot and killed somebody after a robbery. Also the testimony of Frankie Ludwig, who testified that Waters had tried to sell him a black nine millimeter high point gun. Uh, that's the same gun that was used, uh, in this offense that was found in the lake and linked to the bullet casing found at the scene. Um, and again, you know, yes, there was some evidence, uh, if we can just pretend that, that the prosecutor's argument misstatement of law didn't happen and that the jury wasn't confused. Absolutely. A trier of fact, looking at this evidence and the light most favorable to the state could find him guilty of murder based on accountability. Uh, but the evidence was overwhelming. Uh, you know, we have, uh, Mr. Ludwig's testimony, Mr. Reed's testimony, as your honor pointed out, but also Ms. Hearts and Ms. Waters had a clear, um, you know, they, they had an incentive to shift the blame here. Uh, you know, Mr. Mr. Waters agreed to plead armed robbery. He got sentenced to 17 years and Ms. Heart wasn't, wasn't charged or at least wasn't prosecuted in the same with Mr. Brandt. Um, and again, there there's evidence that does support Mr. White's theory of the case was that I was trying to help facilitate a drug deal here. Um, and again, the testimony from Waters and Brandt really don't, doesn't make a lot of sense either. Uh, you know, there was notably this supposed text message that, uh, Mr. White sent to Mr. Waters to act like he had marijuana, uh, that was never produced that trial. So it's, it's only, and, and that's not what Mr. Waters told the police initially. Uh, he said that White contacted him to bring marijuana to the deal and that when he got to the scene, Mr. White asked him if he had the marijuana. So it's perfectly reasonable too, that the jury just, you know, didn't, uh, didn't believe Waters and Brandt's testimony regarding the underlying offense there. And that the only reason they convicted him was based on this misstatement of the law by the prosecutor. So just to, just to wrap up and clarify, um, the jury found Mr. White, uh, not guilty of the armed robbery, not guilty of discharging the firearm that caused the death and that, uh, they found him, uh, guilty of, of let's see, the allegation that White was, or one of those, or one for whose conduct he was legally, legally responsible was armed with a firearm was proven. Those are the things they found. So they didn't find that he shot anybody. They didn't find that he robbed anybody. So for them to find him guilty of murder, first degree murder, uh, the position that you have is that it was based solely on what he did after the, the, the fact, which was to help clean up. And that is attributable to the state's, uh, argument and rebuttal that, uh, that he could be held accountable under, under, for those actions for the murder. Yes, your honor. That seems to be the most logical explanation. And it's certainly the state certainly can't, can't say, can't, it can't be shown beyond a reasonable doubt that that didn't contribute to the jury's verdict. Okay. Well, thank you. And I think you got your 10 minutes back. Yes. I appreciate that. Your honor. Just as to this verdict confusion, Ms. Lee, you don't, you're not allowed any rebuttal. I apologize, but that's the rules of the court. Thank you. Justice Welsh, any questions? All right. Justice Barberis, anything further? I think I'm finished. Thank you. All right. Um, we will take this matter under advisement and issue an order in due course. Thank you both for your arguments today.